IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY          *
COMMISSION
                                      *
          Plaintiff
                                      *
          vs.                    CIVIL ACTION NO. MJG-02-3192
                                      *
PAUL HALL CENTER FOR MARITIME
TRAINING AND EDUCATION, et al.        *

          Defendants               *

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER</u>

The Court has before it Defendant Paul Hall Center for
Maritime Training and Education's Motion to Dismiss [Paper 3],
Seafarers International Union's Motion to Dismiss [Paper 4],
and the materials submitted by the parties related thereto.
The Court finds a hearing unnecessary.


I.    <u>BACKGROUND</u>[1]

Plaintiff Equal Employment Opportunity Commission
("Plaintiff" or "EEOC") is an agency of the United States
charged with the administration, interpretation, and
enforcement of the Age Discrimination in Employment Act

---

[1]  In the present context, it is necessary to assume that
the Plaintiff's version of the disputed facts is correct.
Also, as we are at the dismissal stage, the Court shall only
consider facts alleged in the pleadings and shall disregard
the additional evidence which the parties have attached to
their pleadings.

("ADEA"), 29 U.S.C. §626 et seq.  The EEOC is expressly authorized to bring the underlying action pursuant to §7(b) of the ADEA.  Prior to institution of this lawsuit, the EEOC attempted to eliminate the unlawful employment practices alleged in the Complaint and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference, and persuasion within the meaning of §7(b) of the ADEA, 29 U.S.C. §626(b).

Defendant Paul Hall Center for Maritime Training and Education ("the Center") is an employer doing business in the State of Maryland and employing at least 20 persons.  The Center has, at all times relevant hereto, been an employer engaged in industry affecting commerce within the meaning of §§11(b), (g), and (h) of the ADEA, 29 U.S.C. §§630(b), (g), and (h).  The Seafarers Harry Lundeberg School of Seamanship ("the School") is one of several "schools" run out of the Center.

Defendant Seafarers International Union ("the Union") is a labor organization which negotiates with and maintains arrangements with employers concerning the terms and conditions of employment. (The Center and the Union are collectively referred to as "Defendants.")  The Union has, at all times relevant hereto, had at least 25 members and

2

continuously maintained a hiring hall or hiring office which facilitates employment between employers and members.  The Union has, at all times relevant hereto, been a labor organization engaged in industry affecting commerce within the meaning of §§ 11(d) and (e) of the ADEA, 29 U.S.C. §§ 630(d) and (e).

The Center and the School, in collaboration with the Union, operate the Unlicensed Apprentice Program ("the Program").  The Program is a quasi-military program during which students live in dormitories, wear uniforms, and march from class to class.  There are three phases to the Program: a ninety day, physically demanding vocational course focusing on maritime organization, basic seamanship, emergency action, and social responsibility; twelve weeks of shipboard training; and seven weeks of specialized training based on the student's department of choice.

Beginning no later than April 8, 1996, applicants ages 40 and above, including the Charging Party and other individuals who applied, were discouraged from applying and/or denied admission based on their age.  To be admitted to the Program, applicants had to be between the ages of seventeen and thirty-five.  The Defendants admit that this was standard practice

during the relevant time period but have since eliminated the age requirement.

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) is a means of testing the legal sufficiency of a complaint.  "The question is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the Complaint states any valid claim for relief."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 336 (2d ed. 1987).  The Court, when deciding a motion to dismiss, must consider well-pled allegations in a complaint as true and must construe those allegations in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232,236 (1974); Jenkins v. McKeithen, 395 U.S. 411,421-22 (1969).  The Court must further disregard the contrary allegations of the opposing party.  See A.S. Abell Co. v. Chell, 412 F.2d 712,715 (4th Cir. 1969). However, a complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented.

III. <u>DISCUSSION</u>

    A.   <u>Seafarers International Union</u>

     The Union contends that it is a separate entity from the School, never operated the Program, and played no role in establishing the age requirement at issue.  Therefore, the Union contends that it is not a proper party to this action.

     The EEOC contends that the Union was significantly involved in the creation of the School, that the Center and the School were named after members of the Union, and that the purpose of the Center is to "provide vocational training for SIU Members."  The EEOC further contends that the Union was actively involved in the operation of the Center and the School by advertising on its website, seating Union representatives on the School's "Apprenticeship Review Board" which governs the School's rules and regulations on standards of dress and conduct, appointing six persons from the Union to the School's Trust ("the Trust"), and negotiating terms including types of work and hours, compensation, and transportation for apprentices.

     The Trust has the power to change the School's rules and regulations and to hear appeals from persons whose applications for benefits were denied.  One of the six Union trustees is the Director of Admissions for the School, and the

principal office of the Trust is housed at a Union office. Finally, rejection letters to persons who were not admitted to the Program because of age were sent out on the Union's letterhead.   Pl.'s Opp. to Mot. to Dismiss at 10-11.    In the dismissal context, factual disputes must be resolved in the non-moving party's (the EEOC's) favor.  Furthermore, as the Southern District of New York has held, whether "defendants constituted an integrated enterprise for the purpose of administering and controlling the Apprenticeship Program is a fact-based question that cannot be answered before plaintiff has had discovery." <u>Streeter v. Joint Industry Board of the Electrical Industry, et. al.</u>, 767 F.Supp. 520, 527 (S.D.N.Y. 1991).  Accordingly, the claims against the Union Shall not be dismissed.


B.    <u>ADEA Coverage of Apprenticeship Programs</u>

The ADEA provides, in pertinent part, that

It shall be unlawful for an employer-

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or

tend to deprive any individual of
employment opportunities or otherwise
adversely affect his status as an employee,
because of such individual's age...

### 

It shall be unlawful for a labor
organization--

(2) to limit, segregate, or classify its
membership, or to classify or fail or
refuse to refer for employment any
individual, in any way which would deprive
or tend to deprive any individual of
employment opportunities, or would limit
such employment opportunities or otherwise
adversely affect his status as an employee
or as an applicant for employment, because
of such individual's age;

(3) to cause or attempt to cause an
employer to discriminate against an
individual in violation of this section.

29 U.S.C. § 623(a)(c).

The ADEA does not explicitly include or exclude

apprenticeship programs from coverage.  However, the EEOC was

empowered by Congress to "issue such rules and regulations as

it may consider necessary or appropriate for carrying out this

chapter, and may establish such reasonable exemptions to and

from any or all provisions of this chapter as it may find

necessary and proper in the public interest."  29 U.S.C. §628.

In regard to apprenticeship programs, the EEOC has reversed

its original agency position.

7

In a 1981 interpretive regulation, 29 C.F.R. §1625.13, the EEOC stated that bona fide apprenticeship programs were not covered by the ADEA.  In 1987, the EEOC reaffirmed 29 C.F.R. §1625.13 stating,

> The Commission has determined, after careful reassessment of the statutory language of the ADEA, the Act's legislative history, related statutes and case law, and a thorough examination of the history of apprenticeship programs, that Congress when enacting the ADEA did not intend to subject bona fide apprenticeship programs to the prohibitions of the Act. Accordingly, it is the Commission's view that § 1625.13 clearly embodies the intent of Congress and therefore should remain in full force and effect.

52 FR 33809-01 (Sept. 8, 1987).

However, on April 8, 1996, the EEOC issued an interpretive regulation, 29 C.F.R. §1625.21, which states,

> All apprenticeship programs, including those apprenticeship programs created or maintained by joint labor-management organizations, are subject to the prohibitions of sec. 4 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 623.

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed...." <u>Chevron</u>

8

<u>USA, Inc. v. Natural Resources Defense Council</u>, 467 U.S. 837,

844 (1984).

> If the intent of Congress is clear, that is
> the end of the matter; for the court, as
> well as the agency, must give effect to the
> unambiguously expressed intent of Congress.
> If, however, the court determines Congress
> has not directly addressed the precise
> question at issue, the court does not
> simply impose its own construction on the
> statute, as would be necessary in the
> absence of an administrative
> interpretation. Rather, if the statute is
> silent or ambiguous with respect to the
> specific issue, the question for the court
> is whether the agency's answer is based on
> a permissible construction of the statute.

<u>Id</u>. at 843-844.

Defendants have moved for dismissal of the instant

lawsuit on numerous grounds.  Their core rationale is that 29

C.F.R. §1625.21 is an invalid regulation.  Defendants argue

that the EEOC is not entitled to deference in this case

because the regulation promulgated in 29 C.F.R. §1625.21 is an

attempt to broaden the scope of the ADEA rather than an

adjustment to the ADEA exemption policy set forth in 29 C.F.R.

§1625.13.  Defendants further argue that the EEOC should be

bound by 29 C.F.R. 1625.13 and the underlying rationale which

exempted apprenticeship programs from ADEA coverage because 29

C.F.R. §1625.21 is contradictory.  Finally, Defendants argue

that statutory interpretation would invalidate 29 C.F.R.

9

§1625.21 because "the prohibitions of the ADEA were derived in haec verba from Title VII," which explicitly states that discrimination with regard to apprenticeship programs is forbidden.  Lorillard v. Pons, 434 U.S. 575, 584 (1978). Because there is no such explicit language in the ADEA, Defendants argue that Congressional silence on the issue indicates a legislative intent to exempt apprenticeship programs from ADEA coverage.

Plaintiff argues that §1625.21 is an interpretive regulation and is merely a reconsideration of §1625.13.  As the agency charged with interpreting and issuing regulations concerning the ADEA, the EEOC argues that it is entitled to deference and that its regulation should be upheld.

Plaintiff contends that Congress' silence as to apprenticeship programs indicates an unwillingness to exempt those programs from the ADEA, noting that there are specific exemptions explicitly set forth in the ADEA.[2]  Additionally, Plaintiff notes that the legislative history of the ADEA shows

---

[2]  Section (f) of the ADEA deals with "Lawful practices; age and occupational qualification; other reasonable factors; laws of foreign workplace; seniority system; employee benefit plans; discharge or discipline for good cause."  These areas are exempted from ADEA coverage.

that Congress looked to state age discrimination laws, some of which exempted and some of which did not exempt apprenticeship programs.  There is no reference to any intent to exempt apprenticeship programs in the legislative history.  Plaintiff further contends that Congress' silence on an apprenticeship exemption within the context of those exemptions Congress chose to make explicit and the lack of discussion of any such exemption in the legislative history is a signal of Congress' intent not to exempt apprenticeship programs from ADEA coverage.

Finally, Plaintiff argues that, even if Defendant were correct that §1625.21 was an improper regulation, the prior interpretive regulation (§1625.13) only exempted bona fide apprenticeship programs.  Notably, in its Motion to Dismiss, Defendant quoted language from the Department of Labor discussing the now defunct §1625.13 which states that "Congress when enacting the ADEA did not intend to subject bona fide apprenticeship programs to the prohibitions of the Act." Def. M. to Dismiss at 4 (quoting 52 Fed. Reg. 33809)(emphasis added).  The Program at issue herein is not a bona fide apprenticeship program under 29 C.F.R. §§521.2 and 521.3.  Therefore, Plaintiff argues, even if §1625.13 were to be applied, Defendants' program, not being a bona fide

11

apprenticeship program, would not have been exempt.  In response, Defendant argues that §§521.2 and 521.3 cannot be incorporated into the ADEA and that it was Congress' intent to exempt <u>all</u> apprenticeship programs from the ADEA.

The parties have not presented any decisions of the United States Court of Appeals for the Fourth Circuit addressing the treatment of apprenticeship programs under the ADEA.  "Accordingly, because this issue presents an important and difficult question of first impression within this circuit and [] involves an issue which may not be appropriate for resolution at the pleading stage," the Court shall deny Defendants' motion to dismiss.  <u>Woodson v. US Airways, Inc.</u>, 67 F.Supp 554, 557 (M.D.N.C. 1999).

The Court notes that there appear to be substantial unresolved legal questions of whether there is an exemption from the ADEA for apprenticeship programs, whether any such exemption would be limited to "bona fide" apprenticeship programs, and the definition of such programs.  Thus, the Court would consider a motion for certification of such questions for interlocutory appeal under 28 U.S.C. §1292(b). The Court will not, however, stay or delay this case pending any such interlocutory appellate process.

IV.    <u>CONCLUSION</u>

For the foregoing reasons:

1.    Defendant Seafarers International Union's Motion to Dismiss [Paper 4] is DENIED.

2.    Defendant Paul Hall Center for Maritime Training and Education's Motion to Dismiss [Paper 3] DENIED.

3.    By May 16, 2003, Plaintiff shall arrange a conference with the Court to arrange the scheduling or further proceedings herein.

4.    Any party may, by May 26, 2003, seek certification for an interlocutory appeal under 28 U.S.C. §1292(b).

SO ORDERED, Wednesday, April 30, 2003.

/s/
_____
Marvin J. Garbis
United States District Judge

13