JUDGMENT

FILED: January 7, 2005

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit



NO. 03-2057
CA-02-3192-MJG

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Plaintiff - Appellee

v

SEAFARERS INTERNATIONAL UNION

Defendant - Appellant

and

PAUL HALL CENTER FOR MARITIME TRAINING AND EDUCATION

Defendant

NO. 03-2058
CA-02-3192-MJG

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Plaintiff - Appellee

v.

PAUL HALL CENTER FOR MARITIME TRAINING AND EDUCATION

Defendant - Appellant

and

SEAFARERS INTERNATIONAL UNION

Defendant

---------------------
Appeal from the United States District Court for the
District of Maryland at Baltimore
---------------------

In accordance with the written opinion of this Court
filed this day, the Court affirms the judgment of the District
Court.  This case is remanded to the District Court for further
proceedings consistent with the Court's opinion

A certified copy of this judgment will be provided to the
District Court upon issuance of the mandate.  The judgment will
take effect upon issuance of the mandate.


/s/ Patricia S. Connor
_____
CLERK

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
             *Plaintiff-Appellee,*

v.

SEAFARERS INTERNATIONAL UNION,
             *Defendant-Appellant,*

and

PAUL HALL CENTER FOR MARITIME
TRAINING AND EDUCATION,
             *Defendant.*

No. 03-2057

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
             *Plaintiff-Appellee,*

v.

PAUL HALL CENTER FOR MARITIME
TRAINING AND EDUCATION,
             *Defendant-Appellant,*

and

SEAFARERS INTERNATIONAL UNION,
             *Defendant.*

No. 03-2058

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CA-02-3192-MJG)

Argued: October 29, 2004

Decided: January 7, 2005

Before WILKINSON, MICHAEL, and KING, Circuit Judges.

---

Affirmed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Michael and Judge King joined.

---

## COUNSEL

**ARGUED:** Anthony Walter Kraus, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellants. Eric Stefan Dreiband, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellate Services, Washington, D.C., for Appellee. **ON BRIEF:** Kathleen Pontone, Christian Levine Simpson, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellant Paul Hall Center for Maritime Training and Education; Theresa M. Connolly, PIPER RUDNICK, L.L.P., Reston, Virginia, Paul A. Mallos, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellant Seafarers International Union. Carolyn L. Wheeler, Acting Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Paul D. Ramshaw, Attorney, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

In this interlocutory appeal under 28 U.S.C. § 1292(b) (2000), we have been asked to determine the validity of a 1996 regulation promulgated by appellee, the Equal Employment Opportunity Commission ("EEOC"). This rule extended the strictures of the Age Discrimination in Employment Act ("ADEA") to apprenticeship programs. We find that the regulation is a permissible implementation of the EEOC's power under the ADEA. The rule does not contravene the announced intent of Congress and it reasonably reflects the agency's mandate under that statute. We thus affirm the denial of defendants'

motions to dismiss and remand the case for further proceedings consistent with our decision.

Appellant Paul Hall Center for Maritime Training and Education ("the center") operates a seafaring apprenticeship program in Maryland. Appellant Seafarers International Union ("the union") represents workers in the maritime industry. At least one officer of the union also sits on a management board of the center. The union refers to the program workers who might benefit from its training. Accepted applicants receive financial support from a labor-management trust that the union maintains with participating shipper-employers. All graduates of the program become eligible for union membership. The union also places many workers who complete the apprenticeship with cooperating shipper-employers.

Several individuals aged 40 or older unsuccessfully applied for admission to the program. They complained to the EEOC that they had been turned away because of their age. After an investigation, the EEOC sued the center and the union in district court. The agency referred to its 1996 regulation extending the age discrimination prohibitions of the ADEA to "[a]ll apprenticeship programs."[1] 29 C.F.R. § 1625.21 (2004). The EEOC alleged that appellants had violated this regulation. The center had accepted applications only from those aged 17 to 35 and the union had been complicit in this illegal policy. On behalf of the rebuffed applicants, the EEOC sought damages and injunctive relief forbidding the center and the union from maintaining the age restriction in their program.

---

[1] In its entirety, the regulation provides that "[a]ll apprenticeship programs, including those apprenticeship programs created or maintained by joint labor-management organizations, are subject to the prohibitions of sec. 4 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 623. Age limitations in apprenticeship programs are valid only if excepted under sec. 4(f)(1) of the Act, 29 U.S.C. 623(f)(1), or exempted by the Commission under sec. 9 of the Act, 29 U.S.C. 628, in accordance with the procedures set forth in 29 CFR 1627.15." The prohibitions of 29 U.S.C. § 623 (2000) include, inter alia, the requirement that the regulated entity be an employer and engaged in an employment relationship. *See id.* § 623(a)(1).

Appellants disputed the EEOC's claims. They protested that the 1996 agency regulation was an improper interpretation of the ADEA. In addition, the union claimed that, even if the regulation were upheld, its participation in the program was too attenuated to support liability. Appellants moved the district court to dismiss the case on these bases. The lower court denied the motions in an order dated April 30, 2003. It found that dismissing the union as a defendant was inappropriate at such an early stage. *See Streeter v. Joint Indus. Bd. of Elec. Indus.*, 767 F. Supp. 520, 527 (S.D.N.Y. 1991). The district court also noted that the validity of the 1996 regulation posed a substantial legal question unresolved by existing law. Since resolution of this question would materially advance the termination of the litigation, the judge below invited an application for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) (2000). The district court granted certification on August 1, 2003. The judge amended his April 30 order to reflect the certification. We agreed to hear an interlocutory appeal from that order.

## II.

### A.

When a circuit court certifies an interlocutory appeal under § 1292(b), it assumes jurisdiction of the certified order, not merely the controlling issue of law on which certification was granted. *See* § 1292(b) (referring to "such order"); *see also In re Cinematronics, Inc.*, 916 F.2d 1444, 1448-49 (9th Cir. 1990). In addressing the matters on which the district court ruled in the appealed order, we employ the usual appellate standard governing motions to dismiss. We thus consider questions of law de novo and construe the evidence in the light most favorable to the non-movant. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### B.

Congress has vested in the EEOC the power to "issue such rules and regulations as it may consider necessary or appropriate for carrying out [the ADEA]." 29 U.S.C. § 628 (2000); *see* Pub. L. No. 98-532, 98 Stat. 2705 (1984). The agency thus promulgated the 1996 regulation pursuant to explicit congressional delegation.

When a court reviews an agency's construction of the statute that it administers, it employs the deferential standard of review articulated in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See NISH v. Cohen*, 247 F.3d 197, 201-02 (4th Cir. 2001). Appellants, however, urge us to apply the more probing inquiry of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), in assessing the EEOC's interpretation of the ADEA. They advance a host of arguments to this end, all of which are unavailing.

First, the center and the union argue that the validity of the 1996 regulation involves only pure questions of statutory construction. These are the peculiar province of courts, they argue, and are excepted from *Chevron* deference. The Supreme Court has arguably indicated a willingness to entertain arguments of this sort. *See, e.g., INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987). But if there is a narrow exception of the kind appellants seek, courts have limited it to issues that are quintessentially legal and fail to implicate the agency's expertise in any meaningful manner. *See, e.g., Patel v. Ashcroft*, 294 F.3d 465, 467 (3d Cir. 2002) (according lessened deference for question of whether a crime is an "aggravated felony" for deportation purposes). Whether the ADEA covers apprenticeships is not a question of this sort. Indeed, it involves a multitude of issues that fall squarely within the agency's special competence. *See* 61 Fed. Reg. 15,374 (Apr. 8, 1996) (discussing the policy justification for the 1996 regulation). For this reason, our application of *Chevron* remains appropriate. *See Cohen*, 247 F.3d at 202 n.2; *Virginia v. Browner*, 80 F.3d 869, 878 (4th Cir. 1996).

Second, appellants suggest that the agency's inconsistent position on the issue of apprenticeships over time undermines the case for deference to its current interpretation. *Compare* 29 C.F.R. § 1625.13 (1995), *with* 29 C.F.R. § 1625.21 (2004) (exemption from ADEA for "bona fide" apprenticeships removed by extension of the Act's strictures to all apprenticeships). Of course, the fact that an agency has adopted a certain construction of its organic statute may increase the difficulty of arguing that a varying exposition is also valid. But *Chevron* itself recognized that congressional delegation to administrative bodies may reflect the need to alter policy in response to changing conditions. *See* 467 U.S. at 863-64. Respecting this premise, we see no need to subject a change in regulatory direction to the more prob-

ing standards of *Skidmore*. The *Chevron* inquiry requires only an organic statute and an agency interpretation to determine whether congressional direction has been respected. Any agency vacillation, though potentially relevant to the outcome of court review, does not require rejection of the *Chevron* standard. *See Rust v. Sullivan*, 500 U.S. 173, 186-87 (1991); *Malcomb v. Island Creek Coal Co.*, 15 F.3d 364, 369 (4th Cir. 1994).

Third, appellants claim that the application of the ADEA to apprenticeships is a "fundamental issue" concerning the administrative jurisdiction of the EEOC. Their premise is that *Chevron* deference should be abandoned when an agency has expansively interpreted a statutory provision defining the bounds of its power. *See N. Ill. Steel Supply Co. v. Sec'y of Labor*, 294 F.3d 844, 847 (7th Cir. 2002). But the Supreme Court has never held that *Chevron* should not apply to interpretations of statutory provisions that delimit agencies' jurisdiction. Indeed, many provisions in administrative statutes define the authority of the administering agency in the manner that the center and the union describe. Yet several decisions have accorded *Chevron* deference to agency interpretations of these provisions. *See, e.g., Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 844-47 (1986) (applying *Chevron* to the CFTC's extension of its jurisdiction to common-law counterclaims). We thus see no reason to depart from the usual standard of review here.

Congress has delegated administration of the ADEA to the EEOC. *See* 29 U.S.C. § 628 (2000). Under this authority, the agency promulgated the challenged regulation after public notice and comment. *See* 60 Fed. Reg. 51,762 (Oct. 3, 1995). For the foregoing reasons we review the EEOC's interpretation of the ADEA under the deferential standard of *Chevron. See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

## III

### A.

We begin by addressing the issue on which the parties sought certification: whether the EEOC exceeded its authority under the ADEA in promulgating its 1996 regulation. The familiar first step of *Chevron*

requires us to apply the "traditional tools of statutory construction" to determine if Congress has prohibited the agency's interpretation. 467 U.S. at 843. The foremost of these tools is always the plain text of the statute. *See MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 224-25 (1994); *Allen v. United States*, 173 F.3d 533, 536 (4th Cir. 1999).

The ADEA makes it "unlawful for an employer" to refuse to hire any individual "because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). In addition to "employer[s]," the statute also explicitly applies to "employment agenc[ies]" and "labor organization[s]." § 623(b)-(c). Appellants argue that the specification of these three categories implies the preclusion of apprenticeship programs from coverage.

It is true that Congress need not list exhaustively all entities that it intends to exempt from legislation. Rather, in coverage provisions of administrative statutes, it is often the case that "expressio unius est exclusio alterius." *See Mich. Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1292-93 (D.C. Cir. 1989) (endorsing the application of this maxim in reviewing agency interpretations), *aff'd by an equally divided Court*, 493 U.S. 38 (1989). But it is equally true that Congress can employ general terms in defining the reaches of its laws. And these definitional provisions often support a continuum of permissible administrative constructions. *See INS v. Fed. Labor Relations Auth.*, 4 F.3d 268, 272 (4th Cir. 1993). Indeed, for this reason, "inferences from congressional silence," in the context of administrative law, are often "treacherous." *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 729 (7th Cir. 2004) (quoting *Alto Dairy v. Veneman*, 336 F.3d 560, 566 (7th Cir. 2003)).

Such is the case with the coverage sections of the ADEA. The statutory reference to "employer[s]" who refuse to hire an individual "because of such individual's age" supports a flexible application of the ADEA's strictures, sufficient to cover a variety of workplace relationships. § 623(a)(1); *see also* § 630(b) (providing ADEA's broad definition of "employer" as "a person engaged in an industry affecting commerce"). The most common of these may, as appellants intimate, involve salaried or wage-earning workers subject to the managerial direction of a supervisor. But we have already indicated that the com-

mercial relationships subsumed by the language of § 623(a)(1) may extend beyond this typicality. *See Mangram v. Gen. Motors Corp.*, 108 F.3d 61, 62-63 (4th Cir. 1997). Our construction of this provision focuses on the control that the hiring party exercises over the hired individual. *Id.* (citing *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 982 (4th Cir. 1983)). A similar test for employment under § 623(a)(1) has been adopted by our sister circuits. *See Barnhart v. New York Life Ins. Co.*, 141 F.3d 1310, 1312-13 (9th Cir. 1998); *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 631 (1st Cir. 1996); *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118-19 (5th Cir. 1993); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1495-96 (11th Cir. 1993); *Frankel v. Bally, Inc.*, 987 F.2d 86, 89-90 (2d Cir. 1993).

While the particular application of such tests in the peculiar factual context of these cases sometimes supports a finding of an employment relationship, *see Daughtrey*, 3 F.3d at 1496, and sometimes does not, *see Mangram*, 108 F.3d at 63-64; *Deal*, 5 F.3d at 119, all the formulations of these tests emphasize that they are heavily fact-dependent. And the question before us here is only whether Congress intended to place apprenticeships generally beyond the reach of the statutory provision that these tests apply, § 623(a)(1). We do not think that it did. Indeed, a broad exemption of apprenticeships from the employment relationship as defined by § 623(a)(1) would be inconsistent with the narrow inquiry into the particulars of each case that our circuit and others have consistently pursued. Formation of an apprenticeship program can create commercial ties between the hirer and the trainee that fall within the employment relationships as construed by this precedent. In fact, such ties may be the reason for the formation of the apprenticeship relationship in the first place. At the least, an examination of the ADEA's coverage provisions in light of existing expositions by federal courts reveals no congressional intention to create a flat exemption for apprenticeships from the statute's provisions. The text of the ADEA thus does not foreclose the EEOC's 1996 regulation.

We also think it significant that the safe harbor provisions of the statute, which exempt from regulation various categories of commercial activity, contain no mention of apprenticeships nor any indication that Congress meant to preserve age discrimination therein. *See* § 623(f); *see also Int'l Union, United Auto. v. Johnson Controls, Inc.*,

499 U.S. 187, 201 (1991). For example, the safe harbor provisions permit an otherwise prohibited action whenever "age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." § 623(f)(1). These provisions also exempt a "bona fide seniority system that is not intended to evade the purposes of [the ADEA]." § 623(f)(2). The absence of apprenticeships from this part of the statute only reinforces our conclusion that the text of the ADEA evinces no prohibition of the 1996 rule at issue.

Courts also apply canons of statutory construction at step one of the *Chevron* inquiry. *See Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1165 (9th Cir. 1999). One of these canons recognizes that Congress sometimes chooses to model legislation on its own previous enactments. When this occurs, the rule of in pari materia construction counsels examination of the congressional intent expressed in a progenitor statute to clarify the meaning of any derivative sections in later legislation. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Invoking this canon, and emphasizing that the Court has already recognized that the coverage provisions of the ADEA were modeled closely on those of Title VII, *see Lorillard v. Pons*, 434 U.S. 575, 584 (1978), appellants draw our attention to the latter statute. The center and the union maintain that, even if the four corners of the ADEA provide them no support, an examination of the ADEA in light of Title VII reveals a congressional intent to preclude the EEOC's 1996 regulation. *See* 42 U.S.C. § 2000e-2(a)-(d) (2000).

The center and the union note, for instance, that both Title VII and the ADEA proscribe discrimination by "employer[s]," "employment agenc[ies]," and "labor organization[s]." *Compare* § 2000e-2 (a)-(c), *with* § 623(a)-(c). In a contiguous section, Title VII, although not the ADEA, also explicitly prohibits discrimination in admission or employment by "any employer, labor organization, or joint labor-management committee controlling apprenticeship . . . ." § 2000e-2(d). Relying on the rule that a statute should not be interpreted to render any of its terms redundant, *see Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985), the center and the union claim that Title VII's explicit reference to apprenticeships in § 2000e-2(d) implies that the remaining coverage provisions do not independently reach that business practice. To conclude otherwise, they assert, would reduce Title VII's explicit mention of apprenticeships to sur-

plusage, only echoing a meaning already subsumed by the preceding terms. Thus the reference to "employer[s]" who "fail . . . to hire any individual," in § 2000e-2(a) of Title VII, does not cover apprenticeship programs. It would follow, the center and the union argue, that § 623(a) of the ADEA, like its template from Title VII, cannot extend to apprenticeships. Appellants submit that the EEOC's 1996 rule, expressing the opposite conclusion, is invalid.

Contrary to the center and the union's assertion, however, a close examination of Title VII does not imperil the EEOC's regulation. Indeed, appellants' argument contains an erroneous premise that undermines their conclusion to this end. Their premise is that a capacious interpretation of § 2000e-2(a) of Title VII as encompassing apprenticeships would render the explicit inclusion of that employment practice in section § 2000e-2(d) redundant. But there is a simple reconciliation of the two provisions that affords the former appropriate breadth *and* avoids rendering the latter superfluous. Under this construction, the language of § 2000e-2(a) requires the application of the Act to a class of typical economic relationships subsumed by the common understanding of employment as between a company and a salaried or wage-earning worker. But § 2000e-2(a) also permits, without requiring, extension of the statute's discrimination prohibitions to an additional set of less customary workplace associations. Such a broad delegation to an administering agency, requiring some interpretations and permitting others, would hardly represent a novel course of legislative action. *See Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 474 (2001). Indeed, it is implicit in the very model of agency administration underlying *Chevron*.

This understanding of Title VII's reach, far from disturbing our conclusion that the 1996 regulation at issue validly construed the ADEA, actually reinforces it. For if § 2000e-2(a) of Title VII is broad enough to permit, but not require, application of that Act's strictures to apprenticeships, then omission of an analogue to § 2000e-2(d) in the ADEA, contrary to appellants' suggestion, does nothing to foreclose just such an extension of that statute's prohibitions. It only restores to regulatory discretion the full range of permissible meanings subsumed by the terms "employer" and "individual" in § 2000e-2(a). And this range, we have shown, supports the 1996 rule that the center and the union have challenged here.

Moreover, we believe that our reconciliation of the ADEA with its Title VII model best reflects an important axiom of *Chevron* review - that agencies should remain free to administer their organic statutes to meet the regulatory needs of changing conditions. *See Chevron*, 467 U.S. at 863-64; *Yanez-Popp v. INS*, 998 F.2d 231, 235 (4th Cir. 1993). The EEOC invoked this basis for deference when it found that "dislocations in the American economy" have recently made age discrimination in apprenticeships a more significant obstacle to employment for older workers than it had been before. 61 Fed. Reg. at 15,376. Appellants' proffered construction of Title VII, with its limiting consequences for the ADEA, would bind the EEOC to a much narrower mandate and frustrate realization of this ground for *Chevron* deference here.

A comparison of the text and structure of the two statutes reveals no congressional intention to sanction age discrimination in apprenticeships under the ADEA. Applying the preliminary analysis that *Chevron* requires, we find no reason to disturb the EEOC's 1996 regulation at step one of our review.

B.

We therefore progress to step two of the *Chevron* inquiry and ask whether the agency's rule is a permissible interpretation of its organic statute. 467 U.S. at 844; *NISH v. Cohen*, 247 F.3d 197, 202 (4th Cir. 2001); *Virginia v. Browner*, 80 F.3d 869, 878 (4th Cir. 1996). A reasonable construction at this step is one that "harmonizes with the plain language of the statute, its origin, and its purpose." *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 981 (7th Cir. 1998) (quoting *Bell Fed. Sav. & Loan Ass'n v. Comm'r*, 40 F.3d 224, 227 (7th Cir. 1994)). The 1996 regulation satisfies this standard.

We begin with the statute's language. The ADEA is replete with references to different kinds of entities engaged in business in the commercial sphere. And the statutory proscriptions for these actors' behavior with respect to age are wide-ranging. For instance, the Act regulates employers and unions not merely in their decisions to hire and fire and bestow membership respectively, but also from "limit[-ing], segregat[ing], or classify[ing]" their employees and members in an age-discriminatory manner. *See* § 623 (a)(1), (c). Such broad pro-

hibitions evince an attempt on the part of Congress to ensure seamless continuity of coverage under the ADEA for economic entities in the labor market. Viewed in light of this aim, the EEOC's extension of the Act's strictures to apprenticeships — one of the few spheres of commerce which it has heretofore left largely undisturbed — is sensible.

The ADEA grew out of the concern, expressed by the Secretary of Labor in a report that Congress directed him to prepare, that "the disadvantaged position of older workers in our society" was causing "individual and social losses readily apparent in unemployment, inadequate incomes, and isolation of older persons from the mainstream of activity . . . ." *See Report of the Secretary of Labor, The Older American Worker: Age Discrimination in Employment* 97 (1965). The statute thus evinces a concern with age discrimination in the sphere of employment generally. Apprenticeships are the entry point to the workforce for a significant number of our citizens. *See generally The National Registered Apprenticeship System: Programs and Apprentices, Fiscal Year 2003*, Office of Apprenticeship Training, Employer and Labor Services (OATELS), Department of Labor (2004), *available at* http://www.doleta.gov/atels_bat/pdf/statsheet03.pdf. The EEOC could permissibly conclude that Congress, in an attempt to combat age discrimination in the workplace, did not intend to broadly sanction such discrimination at the doorstep.

It thus did not run against the statutory grain for the EEOC to determine that rapid changes in the American economy and global markets made age restrictions in training programs a greater burden on older workers than they had borne heretofore. Congress declared in the ADEA that its aim is "to promote employment of older persons based on their ability rather than age . . . ." § 621(b). The belief that age and aptitude are not correlated, which underlies this proclamation, pervades the entire statute. Indeed, the Supreme Court has recognized as much. *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422 (1985) (acknowledging the ADEA command that "employers are to evaluate employees . . . on their merits and not their age"). The stereotype underlying age restrictions in apprenticeships, meanwhile, is that older people are unable to learn the skills of a trade as efficiently as their younger counterparts. Such barriers to entry may also demean the contributions to the human capital of younger workers that their

more mature peers can impart. On both accounts, the kind of age discrimination that is alleged here contravenes the reason the statute was enacted. By respecting this purpose, while not contravening clear statutory language, the 1996 regulation represents a permissible interpretation of the Act.[2]

### IV.

Throughout this appeal, and in the proceedings before the district court, the center and the union repeatedly assailed the wisdom of the EEOC's position. They maintained that age-barriers to entry are a hallmark of apprenticeships and complained that the EEOC's regulation effectively guts that employment practice by erasing its defining characteristic. They objected to the decrease in job opportunities for the young that the 1996 rule may cause and protested that "[i]nitial occupational training . . . involves substantial costs, yielding a greater return in the long run from candidates with longer anticipated working lives." They alleged that the agency failed to adequately consider these ill consequences.

Appellants' arguments may have force. To vindicate them, however, would involve a judicial foray into policies far removed from

---

[2]The parties have argued to us numerous grounds for liability, and defenses thereto, that do not depend on the validity of the challenged regulation, yet whose resolution here may be altered by our validation of that rule. For instance, the EEOC alleges that the union violates the ADEA by conditioning its membership on completion of the apprenticeship program. *See* § 623(c)(1)-(2). The agency also asserts that the center violates the ADEA when, in its capacity as employer under § 623(a), it interferes with the access of older persons to employment with other employers. Appellants resist these claims generally, and the union, for its part, argues that the relationship it maintains with the program is too attenuated to support liability under any legal theory. We decline to further address such matters. We are wary of overreaching on interlocutory proceedings, *see Rowland v. Perry*, 41 F.3d 167, 175 (4th Cir. 1994), and believe that the district court, applying our opinion, the Act, and other relevant federal law, is the best forum for continued exposition of these claims if the parties see fit to preserve them on remand. *See generally Herman v. United Bhd. of Carpenters and Joiners of Am.*, 60 F.3d 1375 (9th Cir. 1995).

our mandate under law. In the final analysis, their treatment is for the legislative and executive branches and beyond the province of this court. Congress has already entrusted enforcement of this statute to the EEOC. *See* 29 U.S.C. § 628 (2000); Pub. L. No. 98-532, 98 Stat. 2705 (1984). Pursuant to this delegation, the agency promulgated a rule, after public comment, that brought age discrimination in apprenticeships within the purview of the Act. We are not authorized to judge the wisdom of this step. We are empowered only to ensure that the agency did not contravene the expressed intent of Congress, nor unreasonably apply its mandate, in reaching the interpretation that this rule reflects. We find that it did neither. We therefore affirm the district court's denial of defendants' motions to dismiss and remand the case for further proceedings consistent with this decision.

*AFFIRMED AND REMANDED*