UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PAUL HALL CENTER FOR MARITIME TRAINING & EDUCATION, et. al.<br><br>Defendants. | Civil Action No.<br>MJG-02-CV-3192 |

PLAINTIFF'S OPPOSITION TO DEFENDANT PAUL HALL CENTER'S MOTION
TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION
OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

Plaintiff hereby submits its Opposition to Defendant Paul Hall Center's Motion to Compel Further Responses to Requests for Production of Documents and Answers to Interrogatories. The specific discovery requests and interrogatories at issue are discussed below.

Request No. 7: Any and all documents that EEOC may use as evidence to prove its case or disprove the defenses of the Center or the SIU.

Discussion: What Plaintiff may offer as evidence to prove its case or disprove any defenses are within the thought processes of legal counsel and are thus protected by the attorney work product doctrine. "[I]n the discovery context courts have drawn a distinction between learning that a document exists and learning that it will be used and have refused to allow the latter kind of inquiry. This seems a proper view, as such inquiry raises implicit issues of work product insofar as it delves into the thought processes of counsel in selecting the items to be used

1

at trial." Wright, Miller & Marcus, 8 Federal Practice and Procedure: Civil 2d § 2012 (footnote omitted). Plaintiff has already identified the existence of numerous documents concerning the subject matter of this lawsuit. The Court should reject Defendant's efforts now to intrude upon the thought processes of Plaintiff's counsel.[1]

Request No. 10: Any and all documents which reflect, evidence or refer to earnings or other income, including fringe benefits, received from May 8, 1996 to the present by Steve Rappolee or any other person for whom the Commission is seeking backpay or other monetary relief, including but not limited to their federal and state and local income tax returns, W-2 forms, Social Security Administration earnings forms, pay-stubs, pay vouchers, workers' compensation or other disability insurance payments or other compensation payments for lost earnings, or applicable employment contracts or collective bargaining agreements.

Discussion:

During discussions with Defendant, Plaintiff clarified that in addition to producing W-2s and pay stubs, it does not oppose providing evidence of self-employment or engagement as independent contractors, such as Schedule Cs and 1099s. In fact, Defendant's counsel has acknowledged that Plaintiff provided such documentation in its October 27, 2003 Response to Defendant's Request for Production of Documents.

Plaintiff, however, objects to producing evidence of collateral benefits on the grounds that such a request is irrelevant and constitutes an unwarranted invasion of personal privacy. "Collateral benefits" are those benefits "received from a source distinct from the employer." Fariss v. Lynchburg Foundry, 769 F.2d 958, 966 n. 10 (4th Cir. 1985), citing NLRB v. Gullett Gin

---

[1] The one case cited by Defendant in its Motion, Martinez v. United States, 1998 U.S. Dist. LEXIS 8923 (D.La. June 10, 1998), is unhelpful because it contains no discussion of the work product privilege, at issue in Interrogatory No. 7. Plaintiff also notes that Defendant appears to be overreading Fed. R. Civ. P. Rule 26(a)(1)(B) and that this Court does not require 26(a)(1) disclosures in this case. To the extent that a Pretrial Order requires Plaintiff to identify documents it intends to introduce at trial, Plaintiff will abide by such an Order.

Co., 340 U.S. 361, 364 (1951) and EEOC v. Sandia Corp., 639 F.2d 600, 624-26 (10th Cir. 1980). Collateral benefits would therefore include unemployment benefits, Social Security benefits, workers compensation, and disability insurance payments. The Fourth Circuit has specifically held that such benefits "are not offset because they do not discharge an obligation of the employer, but serve an independent social policy." Id.; See also EEOC v. Ford Motor Co., 645 F.2d 183, 195-196 (4th Cir. 1981) (upholding the district court's decision not to deduct unemployment benefits from back pay, citing with approval NLRB v. Gullett Gin Co., 340 U.S. 361, 364-65 (1951), wherein the Supreme Court held, under the NLRA, that unemployment benefits are collateral, and "failure to take them into account in ordering back pay does not make the employees more than "whole"), rev'd on other grounds, 458 U.S. 219 (1982); Benton v. Carded Graphics, 1994 WL 249221 (4th Cir. June 9, 1994) (unpublished) (affirming trial court's decision not to deduct unemployment compensation from back pay award).

Moreover, Plaintiff objects to providing Defendant with copies of each classmember's tax returns since such a discovery request constitutes an unwarranted invasion of personal privacy and is irrelevant. Federal income tax returns are confidential communications between the taxpayer and the government. See 26 U.S.C. §§ 6103, 7213(a). Indeed, public policy favors nondisclosure of income tax returns since taxpayers will likely be discouraged from reporting all of their taxable income if they are not assured that all of their personal information contained in the tax return will be kept confidential. See DeMasi v. Weiss, 669 F.2d 114, 119 (3rd Cir. 1982), citing Payne v. Howard, 75 F.R.D. 465, 469 (D.D.C. 1977). Tax returns also contain information that often is irrelevant to the disputed issue, such as taxable interest, dividend income, tax credits, and real estate rental income. As a result "judicial consensus exists that, as a matter of policy,

3

great caution should be exercised in ordering the disclosure of tax returns." Terwillinger v. York International Corporation, 176 F.R.D. 214, 216 (W.D.Va. 1997).

When a defendant is able to obtain information about an individual's interim earnings from sources other than tax returns, courts have denied motions to compel the production of tax returns. See Gattegno v. Pricewaterhouse Coopers, LLP, 205 F.R.D. 70, 73-74 (D.Conn. 2001) (motion to compel denied since relevant information was otherwise readily obtainable); Bujnicki v. American Paving and Excavating, Inc., 2004 WL 1071736, *14-15 (W.D.N.Y. 2004) (motion to compel denied where plaintiff's W-2 and wage statements were sufficient to assess plaintiff's earnings); Aliotti v. Vessel Senora, 217 F.R.D. 496, 498 (N.D. Cal. 2003) (motion to compel denied where there were less intrusive means to obtain needed information, such as focused interrogatories); Bagnall v. Freeman Decorating Co., 196 F.R.D. 329 (N.D. Ill. 2000) (denying motion to compel tax returns where plaintiff was willing to produce W-2s and 1099s).

In the case before the Court, Plaintiff has agreed to provide documentation of earnings, such as W-2s, 1099s, pay stubs, Schedule Cs. Plaintiff has also responded to Defendant's interrogatory requests and document requests concerning each classmember's efforts to mitigate and reasons for periods of unemployment. Moreover, Defendant intends to depose each classmember about his or her mitigation efforts. Accordingly, the Court should deny Defendant's motion to compel.

Interrogatory No. 6: For each claimant on behalf of whom EEOC is seeking monetary relief in this case, describe in detail the employment history of each from May 8, 1996 to the present, including each employer worked for, the time period worked for that employer, the position held, the wages and compensation received.

Discussion:

Defendant's request is overbroad in that it seeks almost ten years worth of employment history for each classmember.[2] Recognizing that Defendant is entitled to information concerning each classmember's mitigation efforts after he or she was rejected by Defendant's program, Plaintiff has produced the employment histories for each classmember following his or her rejection from Defendant's apprenticeship program. To require Plaintiff to produce the employment histories for each classmember prior to his or her denial would be unduly burdensome, particularly since Defendant may obtain such information through the course of its depositions of each classmember.

Moreover, the employment histories of each classmember prior to his or her application for employment are irrelevant since Defendant hires individuals into its apprenticeship program with no prior employment history whatsoever. It is undisputed that Defendant's program is an "entry level training program," which "equips new seafarers with the basic skills and knowledge required to begin sailing." Defendant also does not dispute that historically it has admitted individuals between the ages of 18 and 25 and that it has recruited heavily from high schools, where students have little if any prior employment history. In addition, Defendant's own catalog does not identify prior employment history as an admission requirement. See Exhibit 1, "Admissions Requirements & Procedures," Paul Hall Catalog. Indeed, Defendant's application, now available on-line, does not require applicants to list their employment history. See Exhibit 2, Unlicensed Apprentice Program Application. Even more telling is that Defendant's Director

---

[2] Plaintiff notes that Defendant restricted Plaintiff's own attempt to seek discoverable information to no earlier than July 1, 1998 in its responses to Plaintiff's discovery requests.

of Student Services Carl Perth has publicly stated that an applicant's prior history is irrelevant: "Lots of people that have made a lot for themselves came from real bad backgrounds. . . We don't ask you what you did before you got here. It doesn't matter. All we ask is that they go to work." See Exhibit 3, Sandy Alexander, "Down to the Sea in Ships," The Baltimore Sun, April 22, 2001.

As for Defendant's claim that the employment histories of each classmember can predict "what the likelihood of success would have been in completing the training with the defendant and retaining employment," the Court should reject such an argument as highly speculative. It appears disingenuous for Defendant now to argue that it is entitled to far more detailed and intrusive information from the older individuals it discriminated against when it admits younger individuals without any prior employment history whatsoever. Accordingly, the Court should deny Defendant's Motion to Compel.

Respectfully submitted,

ERIC S. DREIBAND
General Counsel

JAMES L. LEE
Deputy General Counsel

GERALD S. KIEL
Regional Attorney

DEBRA M. LAWRENCE
Supervisory Trial Attorney

_____/s/_____
MARIA SALACUSE
Trial Attorney
MD Bar No. 15562
EQUAL EMPLOYMENT

                                              OPPORTUNITY COMMISSION
                                              10 S. Howard Street
                                              3rd Floor
                                              Baltimore, Maryland  21201
                                              (410) 962-4341 (phone)
                                              (410) 962-4270 (fax)