UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. MJG-02-CV-3192 |
| PAUL HALL CENTER FOR MARITIME TRAINING & EDUCATION, et. al. | ) ) ) ) | |
| Defendants. | ) | |

**REPLY TO EEOC'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL FURTHER RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS
AND ANSWERS TO INTERROGATORIES**

Defendant Paul Hall Center for Maritime Training & Education ("the Center"), by

undersigned counsel, hereby submits the following reply to EEOC's Opposition to the Center's

Motion to Compel.

**REQUEST NO. 7** Any and all documents that EEOC may use as evidence to prove its
case or disprove the defenses of the Center or the SIU.

**REPLY:** EEOC has failed to justify its work-product objection for three reasons. First,

the Commission concedes that it must reveal the documents it may use at trial as part of current

pre-trial practice (see Fed. Rule 26 (a)(3)(C) and Local Rule 106.(2)(h)); yet it suggests no

reason why such commonplace disclosure becomes an improper work-product invasion simply

because it is accelerated through a discovery request. Parties are as no less entitled to learn

during discovery of the likely exhibits in the case as they are in preparing the pre-trial order.

Martinez v. United States, 1998 U.S. Dist. Lexis 8923 at * 5 (D. La. 1998).

Second, since the 1993 amendments to Rule 26, as specifically endorsed and implemented by the Supreme Court, there can be no sensible work-product objection to discovering what a party "may use" at trial, because the mandatory disclosure provision of 26(a)(1)(B) is phrased precisely in such terms.  Under that rule, counsel's failure to assess what he may use at trial, and to disclose it at the <u>outset</u> of the case, is sanctionable.  See, e.g., <u>Heath v. F/V Zolotol</u>, 221 F.R.D. 545, 551 (D. Wash. 2004).  While this court usually preempts the operation of that rule with its own scheduling procedure in <u>most</u> cases, <u>see</u> Local Rule 103.9, it clearly does not do so because of some maverick, broader view of the work-product rule, which necessarily would be at odds that of the Supreme Court and the Federal Rules Advisory Committee.

Third, even apart from the requirements of Rule 26(a)(1)(B), the trend in recent years has been for the courts to encourage clarification and definition of claims <u>early</u> in discovery through prompt disclosure of what counsel may use at trial, without there being any perceived affront to work-product protection.  See, e.g., <u>Vanguard Military Equipment Corporation v. David B. Finestone Company, Inc.</u>, 6 F. Supp. 2d 488, 496 (E. D. Va. 1997) (ordering compliance with request for "to produce all documents that it intends to introduce into evidence at the trial..." despite work-product objection); <u>Martinez v. United States</u>, 1998 U.S. Dist. Lexis 8923 at *5 (D. La. 1998) (document production ordered in response to proper request without necessity to wait for pre-trial document exchange); <u>U.S. v. Young & Rubicam, Inc.</u>, 741 F. Supp. 334, 352 (D. Conn. 1990) (standing discovery order required disclosure by government of "all documents which they have reason to believe they may use at trial"); <u>Prouty v. National Railroad Passenger</u>

2

Corporation, 99 F.R.D. 551, 553 (D.D.C. 1983) (ordering the ongoing disclosure of the

documents a party intends to use at trial as decisions about such use are made).

The Wright & Miller commentary relied upon by EEOC cites cases from a bygone era,

when streamlining the pre-trial process was less imperative than today's docket pressures now

make it.  See § 2012 (citing cases from 1949, '50, '63, '63 and '78).  Even then, the commentary

acknowledges there is support for the contrary view (". . . cases have allowed a party to learn

through discovery what documents its opponent plans to rely on to support the allegations in its

pleadings. . . ") and that rule amendment has wrought changes.  Currently, whatever work-

product concerns might have existed historically to such a discovery approach plainly have been

displaced by a more pragmatic concern for efficiency, simplicity and early clarification and

assessment of claims.


**REQUEST NO. 10**  Any and all documents which reflect, evidence or refer to earnings or other income, including fringe benefits, received from May 8, 1996 to the present by Steve Rappolee or any other person for whom the Commission is seeking backpay or other monetary relief, including but not limited to their federal and state or local income tax returns, W-2 forms, Social Security Administration earnings forms, pay-stubs, pay vouchers, workers' compensation or other disability insurance payments or other compensation payments for lost earnings, or applicable employment contracts or collective bargaining agreements.


**REPLY:**  This lawsuit involves an ADEA claim against an apprenticeship program for

entry-level seafarers, which formerly had a maximum age requirement.  See EEOC v. Seafarers

International Union, ___ F3d ___ , App. No. 03-2057 (4th Cir.,  2005).  If EEOC prevails at trial,

and also can prove non-speculative backpay claims for older, would-be applicants for the

program, defendants would be entitled to have such backpay reduced by at least two factors:  (1)

an offset for interim earnings made by claimants during any backpay period and (2) cessation of

backpay during any period in which the claimant was disabled and unable to work.

For purposes of determining interim earnings, the defendants are entitled to documents reflecting such amounts, including tax returns. See, e.g., Williams v. Hopkins, 2004 U.S. Dist. Lexis 6299 at *6 (W.D. Tenn. 2004) ("the court has determined that Williams' income tax records are relevant for computing William's interim earnings"); U. S. v. Interamerican College of Physicians and Surgeons, Inc., 1999 U.S. Dist. Lexis 15746 at *8 (S.D. N.Y. 1999) (for purposes of verifying backpay claim, "plaintiff shall produce to defendant's counsel those portions of his tax returns that reflect earnings for the years 1995-98"); EEOC v. Kim and Ted, Inc., 1995 U.S. Dist. Lexis 14510 (N. D. Ill. 1995) (tax returns discoverable subject to confidentiality order); Nielsen v. Society of the New York Hospital, 1989 U.S. Dist. Lexis 4966 at *1 (S.D. N.Y. 1989)(ordering production of redacted Forms 1040 showing amounts and sources of income from wages, salaries, tips and earned income.)

To allay EEOC's confidentiality concerns, the proper solution is to order production of the tax returns on either a confidential basis or subject to redaction of any irrelevant matter. Id. The more confined, piecemeal production that EEOC seeks to provide, limited to W-2s, 1099s and other schedules, has been rejected as inadequate in employment discrimination cases. As noted, for example, in Hanoch v. Janoff & Olshan, Inc., 1999 U.S. Dist. Lexis 6397 at * 1-2 (S.D. N.Y. 1999):

> Defendants in this employment discrimination action, in which plaintiff seeks damages for lost past and future earnings, seek production of plaintiff's tax returns for the years 1996 to the present, and plaintiff, offering to produce all W-2 forms and any other documents reflecting income from wages for those years, objects. . . Plaintiff's income and the sources of that income for the years 1996 to the present are relevant. Production of W-2s and other income from wages does not necessarily give a complete picture of a person's income. . . [] Plaintiff is therefore directed to produce (within 21 days of the date hereof or such other period to which the parties may agree in writing") copies of only those portions of his federal tax returns . . . showing the amount and sources of his income from wages, salaries, tips and other earned income. . .

(Emphasis added).   The same result is warranted in this discrimination action.

Even if EEOC's more limited production were to be permitted, contrary to the better practice, it should be subject in all events to the conditions (1) that EEOC give assurances to the Center for each claimant that the total earnings reflected on those more limited documents is equal to or not less than that reflected for the relevant year on lines 7 and 10 of the claimant's Forms 1040 for "wages, salaries and tips" and "business income" and (2) that the claimant has not discarded such other documents while retaining his Forms 1040, leaving the returns as the only reliable, surviving tax documentation of earnings.   The Center also should be permitted to re-raise its entitlement to tax returns if, during the deposition of any claimant, earnings issues arise that could be better illuminated by the returns than the substitute documents EEOC seeks to supply instead.

For purposes of determining and confirming the precise periods in which the claimants were disabled from working, the Center also is entitled to claimants' records of disability income, such as Social Security payments and other disability income records.   Limiting such discovery will deprive the Center of a ready source of evidence for pin-pointing and verifying relevant backpay reduction periods based on the claimants' inability to work.   It also would improperly force the Center either to rely on the typically vague, undocumented and self-serving recollections of claimants in depositions or to engage in expensive nationwide searches of employment records for over forty claimants, encompassing potentially hundreds of employers.

Similarly, for purposes of tracking when claimants were allegedly unemployed and possibly qualifying for full backpay, the Center also is entitled to documentation of claimants' unemployment compensation records, confirming their alleged unemployment periods.

EEOC's argument that defendants are not entitled to <u>offsets</u> for disability or unemployment payments simply ignores the other substantial value that the documentation of such benefits has, both in supplying evidence, or leading to evidence, concerning claimants' ability to work and/or periods of employment and unemployment.  In addition, the issue of whether or not defendants are entitled to offsets often largely depends on the exercise of judicial discretion at trial in the particular case.  <u>Flowers v. Komatsu Mining Sys. Inc.</u>, 165 F.3d 554, 557 (7th Cir. 1999).  Accordingly, discovery on such matters should proceed, with the parties properly reserving their positions on offsets for trial, rather than by EEOC prematurely asserting its positions as a basis for unfairly limiting relevant discovery.

**INTERROGATORY NO.  6**    For each claimant on behalf of whom EEOC is seeking monetary relief in this case, describe in detail the employment history of each from May 8, 1996 to the present, including each employer worked for, the time period worked for that employer, the position held, the wages and compensation received.

**REPLY:**    This lawsuit involves an ADEA claim against an apprenticeship program for entry-level seafarers, which formerly had a maximum age requirement.  <u>See EEOC v. Seafarers International Union</u>, ___ F3d ___ , App. No. 03-2057 (4th Cir.,  2005).  If EEOC prevails at trial, and backpay relief is not categorically denied as grossly conjectural, the court faces the highly speculative task of trying to reconstruct what might have happened if older claimants had been permitted to apply to the program.  <u>See, e.g.</u>, <u>EEOC v. JATC of the Joint Industry Board for the Electrical Industry</u>, 186 F.3d 110, 124  (2nd Cir. 1998):

> The district court must perform fact-finding as to each plaintiff . . . [and] may determine that each plaintiff would have gone through the apprenticeship program or it may determine that on these facts one cannot speculate as to what may have occurred.

In this case, the court will have to attempt to reconstruct whether each alleged, would-be applicant would have followed through in completing the various applications for the program,

would have traveled to Maryland for training if admitted, would have completed the apprenticeship program, and would have worked for any particular period as a seafarer thereafter, under the strenuous, irregular and isolating working conditions of the industry.

The extended work histories of claimants are clearly a source of relevant evidence for purposes of inferring the probability of their real interest, commitment and capacity to have entered and successfully completed the apprenticeship program, and to have worked successfully in the industry thereafter. See opening memorandum at 5. In dismissing such inferences as "highly speculative," EEOC unfairly seeks to have it both ways: to press highly conjectural backpay claims, based on broad hypothetical inferences of what might have happened, while withholding evidence because the counter-inferences it supports are supposedly "speculative." The court cannot properly tilt the playing-field in this manner to EEOC's advantage. Moreover, such work histories also supply sources of relevant evidence concerning skills available for mitigating damages and verification of application information, neither of which requires "speculative" inferences of any sort.

EEOC's other arguments -- that extended work histories (1) are not necessary for purposes of computing interim-earning offsets from backpay and (2) are not a necessary prerequisite for being admitted to the apprenticeship program -- are strawmen. The Center does not seek the disputed extended work histories either for purposes of proving interim earnings or for imposing a nonexistent work-experience requirement. Rather, such histories are sought to counter the hypothetical assumptions on which EEOC will seek to rely concerning likelihood of success by claimants as apprentices and working seafarers. The absence of any work-experience requirement for entering the program in no way detracts from the evidentiary value of work histories in attempting to reconstruct inferentially at trial what success any older interested

job-seeker might have had in connection with the program, either as an applicant, trainee and or entry-level seafarer.

In addition, contrary to EEOC's misleading assertions about the Center's application procedure, requiring applicants to account for their work histories has long been part of the apprenticeship program's admission process. See Application at p.2, attached as Exhibit 1 hereto, requiring the applicant's "Employment Record." The one-page website application that EEOC has submitted to the court is a preliminary application form that, as EEOC well knows, is followed by a more extensive booklet application with its "Employment Record" inquiry. EEOC reviewed many such booklet applications during the summer of 2003.

EEOC's attempted reliance on the Baltimore Sun article from 2001 is equally contrived. The article, which includes a double hearsay snippet from an interview with a now-retired Center staff member, says nothing about employment history or its supposed irrelevance in the application process. Instead, as is evident from the interviewee's reference to "real bad backgrounds," the quoted remarks concerned the program's openness to people from distressed circumstances with respect to family, upbringing, and social and economic standing. Furthermore, in stating that "we don't ask you what you did before you got here," the interviewee's apparent reference was to successful applicants who were already at the school and whose backgrounds are not thereafter asked about or discussed in any stigmatizing way. The application form attached as Exhibit 1 plainly indicates that in the admission process, the Center does ask what applicants did before they get to the Center.

Finally, even if EEOC had gotten its facts right, whatever risk the Center might be willing to accept, as part of it educational mission, in offering a new-leaf opportunity to its applicants despite problematic backgrounds in no way would diminish the utility of background

8

information, as a predictive measure, in hypothesizing how any such opportunity might have played out for purposes of awarding or withholding backpay.

CONCLUSION

For the foregoing reasons, the Center contends that the disputed document requests and interrogatory are proper and that its motion to compel further response to them should be granted.

Respectfully submitted,


_____/s/_____
Kathleen Pontone (Bar No. 1225)
Anthony W. Kraus (Bar No. 2351)
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464

Counsel for Defendant
Paul Hall Center

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Compel Further Response to Request for

Production of Documents was mailed first-class, postage prepaid, this 17th day of March, 2005

to:

        Maria Salacuse, Esq.
        Equal Employment Opportunity Commission
        10 S. Howard Street
        3rd Floor
        Baltimore, Maryland 21201

        Theresa M. Connolly, Esq.
        Piper Rudnick, LLP
        1775 Wiehle Avenue, Suite 400
        Reston, VA 20190-5159

        Paul A. Mallos, Esq.
        Piper Rudnik, LLP
        6225 Smith Avenue
        Baltimore, MD 21209

                                /s/
                              Anthony W. Kraus